Haywood A. Helms and his wife Minnie Lou Helms own a parcel of land in Barbour County located adjacent to an unpaved public county road maintained by the County. Within its right of way, the County provides routine maintenance to unpaved public roads by scraping the roadway and clearing the ditches beside the road to allow for water drainage. Before 1995, the side of the ditch adjacent to the Helms property was a high, vertical bank. The County's right of way reached only to the top of the vertical bank. In 1995, the Helmses tapered the bank to soften the slope leading to the ditch in order to make the property more productive and more scenic. The tapering operation, however, did not alter the County's right of way because it left in place the lower portion of the vertical bank and the ditch beside the road, which was necessary for adequate water drainage. Mr. Helms planted pine trees on the newly created slope and erected a single-strand, electric fence approximately nine feet from the bottom of the ditch, which he contends was to keep his goats away from the newly planted pine trees.
In October 1999, an employee of the County, operating a grading machine within the scope of his employment, destroyed many of the young pine trees the Helmses had planted. The Helmses claim the value of the pine trees is $6,500. The grading operation also eliminated the remainder of the vertical bank, so that it is now necessary that the slope of the Helmses' property be used for water drainage. As a result, under the County's definition of "right of way," the County's right of way, after the grading operation, was extended from what was once the top of the vertical bank beside the ditch on the side of the road to the top of the gentle slope. The County contends that the grader operator believed the electric fence marked the County right of way and that the grading operation affected land only five feet from the bottom of the ditch. When the Helmses *Page 827 
sought an explanation from the County for the destruction of the trees, they were told that the County had the right to destroy the trees in the grading operation because the trees were on the County's right of way. The County defines the right of way as "the top of the back slope [on one side of the road] to the top of the back slope [on the other side]. . . ." Consequently, after the grading operation, the right of way was presumably expanded further onto the Helmses' property, from what was the top point of the vertical bank to the top of the gentle slope created when the Helmses tapered the bank in 1995.
On March 31, 2000, the Helmses filed the following claim against the Barbour County Commission:
 "COMES NOW the undersigned, Haywood A. Helms and wife, Minnie Lou Helms and make the following itemized claim against Barbour County, Alabama pursuant to Code of Alabama, § 6-5-20 by stating as follows, viz:
 "The undersigned are the owners of the following described parcel of real property located in Barbour County, Alabama, to-wit:
"PARCEL ONE
 "That part of Southeast Quarter of Northwest Quarter, lying East of public unpaved road (Jonestown road), Section 17, Township 8, Range 25, containing 26 acres, more or less.
"PARCEL TWO
 "All of the NE 1/4 of the SW 1/4 lying NE of Easterling Mill Road. Being in the NE 1/4 of the SW 1/4, Section 17, Township 8 North, Range 25 east. LESS AND EXCEPT one acre, more or less, surrounding the present residence of Q.W. Helms and Fannie E. Helms.
 "Parcel One was conveyed to Haywood A. Helms and wife, Minnie Lou Helms by Q.W. Helms and wife, Fannie E. Helms on or about the 12th day of July, 1977 by warranty deed as found recorded in Official Record Book C-78 at page 707, Probate Records of Barbour County, Alabama. Parcel Two was conveyed to Haywood A. Helms and wife, Minnie Lou Helms by Q.W. Helms and wife, Fannie E. Helms on or about the 12th day of November 1984 by warranty deed as found recorded in Official Record Book C-48 at page 678. The above described parcel land lies between and is contiguous to two county maintained roads commonly referred to as Easterling Mill Road and Jonestown Road.
 "From the time claimants came into possession of said property until October 1999 there had been no dispute regarding the right-of-way of the dirt road. In 1995 claimants caused certain improvements to be made upon the property. The improvements included the sloping of a steep incline and the planting of long leaf pine trees. These improvements remained upon the property from its date of completion until October of 1999.
 "In October 1999 a road grader came to the dirt road for the purpose of scraping same. During the scraping process the grader went outside of the established right-of-way and came upon the property of the claimants. This caused the long leaf pine trees to be destroyed. This further caused the right-of-way to be expanded without the consent of the property owners and without compensation to the property owners.
 "The planted long leaf pines had been growing for approximately four (4) years. The value of these pines including their cost and lost growth totals $6,500.00. It is difficult to determine the value for the use of the land taken without consent. In lieu of renumeration *Page 828 
[sic] for this improper taking the claimants would simply request that the county acknowledge the improper extension of the right-of-way and assure claimants that the grader will not improperly scrape their property in the future."
On November 15, 2000, the Helmses sued the County, the Commission, and the members of the Commission, in their official capacity (hereinafter the County, the Commission, and its members are referred to collectively as "the Commission"). In addition to claiming that their property had been damaged by the County's actions, the Helmses sought a judgment declaring that the Commission's definition of its right of way was arbitrary and capricious, and, therefore, unlawful. The Helmses aver that the Commission's definition of right of way, which allows for expansion of the right of way, violates the federal and state constitutions in that it allows the Commission to take property from owners without due process and without fair compensation. The Helmses sought a judgment declaring that the Commission's right-of-way policy is unlawful, sought injunctive relief enjoining the Commission from further using its right-of-way policy to expand its right of way, and sought damages "for loss of [the] pine trees, loss of their growth and for trespass."
On December 13, 2000, the Commission filed a motion to dismiss the Helmses' action. The Commission alleged that the Helmses' claim against the County, made pursuant to § 6-5-20, Ala. Code 1975, and a prerequisite to legal action against the County, was not sufficiently itemized because, it contends, the claim did not request that the County's right-of-way policy be declared unconstitutional and did not request damages for the loss of property.
On December 10, 2002, the trial court, upon the pleadings and facts stipulated by the parties, granted the Commission's motion and dismissed the Helmses' complaint. In its order, the trial court stated that the "Plaintiffs' failure to present their Declaratory Judgment claims of an unlawful right-of-way policy, damages, and trespass, to the County, bars their assertion of those theories in the Complaint. Jacks v. Madison County,741 So.2d 429 (1999); Williams v. McMillan, 352 So.2d 1347 (1977)."
On January 8, 2003, the Helmses filed a motion to alter, amend, or vacate that judgment, alleging that the Court had erred in concluding that the theories of liability and damage asserted in their complaint were not presented in their § 6-5-20 claim. On November 24, 2003, the trial court denied the Helmses' motion. This appeal followed.
 "The standard of review of the grant of a motion to dismiss . . . was set out in Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993):
 "`On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review . . . is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a . . . dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'"
Jacks v. Madison County, 741 So.2d 429, 430 (Ala.Civ.App. 1999) (citations omitted). *Page 829 
In addition, "[m]otions to dismiss are rarely appropriate in declaratory judgment proceedings. Such a motion does, however, serve one purpose, that of determining whether the [complaint] states the substance of a bonafide justiciable controversy which should be settled." Wallace v. Burleson, 361 So.2d 554, 555
(Ala. 1978) (citation omitted).
The issue in this case is whether the claim presented to the Commission by the plaintiffs pursuant to § 6-5-20 was sufficiently "itemized" to notify the County of the alleged basis for the County's liability and for the compensation demanded.
"An action must not be commenced against a county until the claim has been presented to the county commission. . . ." Ala. Code 1975, § 6-5-20(a). "No claim against the county shall be passed upon or allowed by the county commission unless it is itemized by the claimant. . . ." Ala. Code 1975, § 11-12-5. The issue whether the § 6-5-20 claim presented by the Helmses was sufficiently itemized is a question of interpretation of the term "itemized" similar to the question presented to this Court inElmore County Commission v. Ragona, 540 So.2d 720 (Ala. 1989). The purpose of the requirement that the claim filed pursuant to §6-5-20 be "itemized" is as follows:
 "[T]o provide county governing bodies with notice of claims against the county and an opportunity to audit and investigate the claims. . . .
". . . .
 ". . . [T]he itemization provision should not be narrowly construed as applying solely to a breakdown of damages in precise dollar amounts. Rather, the `items' should include a factual background, a description of the event or transaction giving rise to the claim, the alleged basis for the county's liability for damages resulting from the event or transaction, the nature of the damages, and the compensation demanded. . . .
 ". . . In Diemert v. City of Mobile, 474 So.2d 663
(Ala. 1985), this Court held that, with regard to claims against municipalities, strict compliance with the notice statutes is no longer required. The Court stated that cities could not complain that relatively minor deficiencies in claims prevent them from acquiring knowledge of actions pending against them. 474 So.2d at 666. This is the more reasonable approach to the notice requirements, and there is no reasonable basis upon which to apply a different standard to claims against counties."
Ragona, 540 So.2d at 723.
Here, in light of Ragona, the Helmses' § 6-5-20 claim was sufficient to notify the County of the factual background, a description of the event giving rise to the claims, the alleged basis for the County's liability for damages resulting from the event, the nature of the damages, and the compensation demanded. The Helmses' § 6-5-20 claim includes a detailed description of the property as to which the claim was being asserted, a description of when and how the improvements to the property were made by the Helmses, a description of when and how the grading operation resulted in both damage to the property and an improper taking through expansion of the County's right of way without compensation, a description of the nature of the damage and a dollar figure for the damages resulting from the loss of the pine trees.
The Commission makes several arguments in support of the trial court's order dismissing the Helmses' complaint. The Commission first argues that the Helmses' § 6-5-20 claim was not properly itemized because, it states, the claim did not state *Page 830 
that the damage to their property was caused by the County. This argument is without merit because both parties stipulated that an employee of the County destroyed many of the Helmses' young pine trees in the process of grading what remained of the vertical bank. The Commission was unquestionably on notice that the Helmses believed that the County had caused damage to their property.
The Commission next argues that the Helmses' § 6-5-20 claim was not properly itemized because, it argues, the claim did not state the basis for the County's liability. However, the Helmses, in their § 6-5-20 claim, satisfactorily allege two bases for their claim against the Commission. The Helmses first allege a trespass claim with the following language: "During the scraping process the grader went outside of the established right-of-way and cameupon the property of the claimants. This caused the long leaf pines to be destroyed." The Helmses next allege an "improper taking" claim, stating that "[t]his further caused the right-of-way to be expanded without the consent of the property owners and without compensation to the property owners." Therefore, the bases for the County's liability as stated in the Helmses' § 6-5-20 claim are substantially the same as those stated in their complaint.
Finally, the Commission argues that the Helmses' § 6-5-20 claim was not properly itemized because, it says, the claim did not demand compensation. However, on the trespass claim, the Helmses specified a dollar figure ($6,500) for the value of the pine trees that were destroyed. And, on the taking claim, in lieu of remuneration, the Helmses requested an acknowledgment of the improper expansion of the right of way and assurance from the County that the grader would not "improperly scrape" their property in the future. Furthermore, the form of relief requested in the § 6-5-20 claim and the complaint is substantially the same. In each, money damages were claimed as a result of the trespass that caused the damage to the trees and injunctive relief requested for the taking.
We conclude that the Helmses' § 6-5-20 claim substantially complied with the notice requirements of that statute. The deficiencies in the § 6-5-20 claim noted by the trial court in dismissing the complaint are relatively minor; they did not prevent the Commission from having adequate notice of the claims against it and an "opportunity to audit and investigate the claims."
Based on the foregoing, we reverse the trial court's order granting the Commission's motion to dismiss, and we remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.